UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARJORIE GASPARD,<br><br>*Plaintiff*,<br><br>v.<br><br>KINGS AUTOSHOW INC. d/b/a BROOKLYN MITSUBISHI; GM FINANCIAL d/b/a AMERICREDIT FINANCIAL SERVICES, INC.; and "JOHN DOE" a fictitious name for a party whose real name is not known,<br><br>*Defendants*. | Civil Action No.: 20-cv-2896<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Marjorie Gaspard, Plaintiff herein, by her attorneys, alleges and complains of Defendants as follows:

## PRELIMINARY STATEMENT

1. Marjorie Gaspard ("Plaintiff" or "Ms. Gaspard") is a victim of unlawful and predatory sales, financing, advertising, credit, and repossession practices in connection with her purchase of 2014 Nissan Murano S (VIN #JN8AZ1MW6EW518928) (the "Vehicle") in 2018 and its subsequent unlawful repossession in early 2020.

2. Ms. Gaspard brings claims against Defendants for violations of the Federal Equal Credit Opportunity Act, 15 U.S.C. § 1691, *et seq*. ("ECOA"), the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. ("FDCPA"), New York Uniform Commercial Code ("UCC"), New York General Business Law § 349 ("NYGBL § 349"), New York General Business Law § 350 ("NYGBL § 350"), conversion, fraud, and breach of contract.

1

## JURISDICTION AND VENUE

3. The Court has jurisdiction pursuant to 15 U.S.C. § 1691e, 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

4. Jurisdiction over Plaintiff's claims for declaratory relief is conferred by 28 U.S.C. § 2201.

5. Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367.

6. Venue in this District is proper under 28 U.S.C. § 1391 because Plaintiff resides in this District, a substantial part of the events and occurrences complained of occurred within this District, and Defendants maintain offices, transact business, and are otherwise found in this District.

## PARTIES

7. Plaintiff Marjorie Gaspard is a natural person and citizen of New York residing in Cambria Heights, New York.

8. Ms. Gaspard is a "consumer," as defined in 15 U.S.C. § 1602(i) and 15 U.S.C § 1692a(3).

9. Defendant Kings Autoshow Inc. d/b/a Brooklyn Mitsubishi (the "Dealership"), is the automobile dealership located in Brooklyn, New York (Kings County) that sold the Vehicle to Ms. Gaspard.

10. The Dealership was, at all times relevant to this Complaint, a "creditor" as defined by 15 U.S.C. § 1691a(e).

11. Defendant GM Financial d/b/a Americredit Financial Services, Inc. ("Americredit") is a corporation duly authorized and qualified to do business in New York.

12. Americredit was the assignee of the Retail Installment Contract ("RIC') referenced in the instant Complaint.

13. Pursuant to 16 CFR § 433.2, N.Y. Pers. Prop. Law § 302.9(a), the RIC, and other applicable law, Americredit is subject to any claims which Plaintiff asserts against the Dealership over occurrences which happened while Americredit was assignee of the RIC.

14. Defendant "John Doe" is the fictitious name of the currently unknown entity that unlawfully repossessed Plaintiff's Vehicle and brought it to the Dealership.

15. John Doe was, at all times relevant to this Complaint, a "debt collector" as defined by 15 U.S.C. § 1692a(6) and 15 U.S.C. § 1692f(6).

## FACTS

16. On or about March 17, 2018, Ms. Marjorie Gaspard went to the Dealership with the intent to purchase a red 2014 Nissan Murano SL she had seen advertised on the Dealership's website.

17. A salesman at the Dealership informed Ms. Gaspard that the 2014 Nissan Murano SL was no longer available, and he instead offered to sell her a Toyota Camry or a Mitsubishi.

18. Ms. Gaspard rejected the salesman's offer and prepared to leave but, before she could, the salesman offered her a white 2014 Nissan Murano LE.

19. A salesman provided Ms. Gaspard with a printout showing the 2014 Nissan Murano LE the Dealership was offering to her, including its VIN number and its retail value.

20. Ms. Gaspard agreed to purchase this specific vehicle.

21. After waiting over 5 hours for the Dealership to "prepare" the vehicle for her, a representative brought out paperwork for her to sign and told her it was for the 2014 Nissan Murano LE.

22. Exhausted and wanting to leave the Dealership, Ms. Gaspard signed the paperwork provided to her by the representative.

23. However, using a bait and switch tactic, the documents the Dealership gave Ms. Gaspard were for an inferior model vehicle and Ms. Gaspard was not given the 2014 Nissan Murano LE that she was promised.

24. Ms. Gaspard, upon reviewing the documents the following day, noticed that they were actually for a 2014 Nissan Murano S.

25. This Nissan Murano S she had been given was worth approximately $7,000 less than the Nissan Murano LE that she had expected to receive.

26. Ms. Gaspard would never have agreed to the transaction had she known that she would be provided with this inferior and less valuable Vehicle.

27. Angered at the Dealership's deception, Ms. Gaspard attempted to return the Vehicle the following day.

28. However, the Dealership rejected Ms. Gaspard's attempt to return the Vehicle and instead berated and insulted her.

29. The Dealership justified its actions by suggesting that it had done Ms. Gaspard a "favor" by selling her the inferior car because her credit was allegedly poor.

30. As the RIC is assigned on its face to Americredit, Ms. Gaspard subsequently called them to try and resolve her dispute.

31. An Americredit representative told her that they would make note of her dispute but that there was nothing they could do about the situation as this was solely an issue between the Dealership and her. This is, of course, untrue as a matter of both federal and state law.

32. On or about April 5, 2018, Ms. Gaspard submitted a complaint against the Dealership to the New York Department of Consumer Affairs.

33. On or about June 4, 2018, the New York Department of Consumer Affairs replied to Ms. Gaspard's complaint and informed her that they were unable to satisfactorily resolve the dispute.

34. Over a year later, Ms. Gaspard fell behind on payments for the Vehicle and Americredit repossessed it in early November of 2019.

35. On November 27, 2019, Ms. Gaspard paid all of the fees required by Americredit and successfully reinstated her loan.

36. The Vehicle was released to Ms. Gaspard at that time.

37. By letter dated December 12, 2019, Ms. Gaspard was informed by Americredit that the Dealership had purchased the RIC from Americredit.

38. The following day, Ms. Gaspard called Americredit for clarification and was told that her account with Americredit was paid in full and closed.

39. Immediately thereafter, Ms. Gaspard called the Dealership to clarify the situation and was told by a representative identifying herself as "Shantel" that the Vehicle was paid off and that Plaintiff should call Americredit to release the title.

40. By letter dated December 23, 2019, Ms. Gaspard received the Vehicle's title in her name with no lien recorded on it.

41. Ms. Gaspard received no further communication from the Dealership regarding her loan.

42. On or about January 4, 2020, Ms. Gaspard walked outside her home to find her Vehicle being hooked up to a tow truck by Defendant John Doe.

43. Although Ms. Gaspard demanded an explanation, John Doe would only provide the false justification that he was taking her property because her financial institution had repossessed it.

44. Ms. Gaspard, witnessing her Vehicle seemingly being stolen by John Doe, called the police who informed her that the Dealership had ordered the repossession.

45. Plaintiff went to the Dealership where a representative informed her that he had John Doe tow her car because he had been ordered to by his boss.

46. The Dealership subsequently refused to return Ms. Gaspard's property.

47. On January 10, the Department of Consumer Affairs e-mailed Ms. Gaspard and requested further information regarding her dispute as they were investigating the Dealership.

48. Ms. Gaspard subsequently provided the Department with details regarding the Dealership's unscrupulous practices.

49. Upon information and belief, despite the RIC's express provision that the Dealership would provide Ms. Gaspard notice before any sale of the Vehicle, the Dealership has since unlawfully sold her property to a third party.

## FIRST CLAIM FOR RELIEF
**Federal Equal Credit Opportunity Act, 15 U.S.C. § 1691, *et seq.* ("ECOA")**
**(As to the Dealership and Americredit)**

50. Plaintiff repeats and re-alleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

51. The Dealership regularly extends, renews or continues credit and, in the instant action, the Dealership is a subsequent assignee of Americredit who also regularly extends, renews, or continues credit. Thus, the Dealership is a creditor under ECOA. *See* 15 U.S.C. § 1691a(e).

52. As a creditor, the Dealership is responsible for providing consumers, such as Plaintiff, its reasons for taking adverse actions against them. *See* U.S.C. § 1691(d).

53. Adverse action is defined under ECOA as *inter alia*: a "revocation of credit", as well as "a change in the terms of an existing credit arrangement". *See* U.S.C. § 1691(d)(6).

54. By unilaterally repossessing the Vehicle rather than allowing Ms. Gaspard to continue making payments under the loan, the Dealership revoked Ms. Gaspard's credit and/or made a material change in the terms of an existing credit arrangement.

55. As such, the Dealership needed to provide a statement of the reasons for its adverse action against her and its failure to do so violated the statute.

56. As a result of this ECOA violation, Plaintiff has suffered substantial actual damages, including the loss of her Vehicle, the loss of her equity in the Vehicle, anxiety, humiliation, embarrassment, pain, suffering and emotional distress.

57. As a result of the above, the Dealership is liable to Plaintiff for statutory damages, actual damages, punitive damages, attorneys' fees and costs, injunctive relief and declaratory relief.

**SECOND CLAIM FOR RELIEF**
**Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. ("FDCPA")**
**(As to John Doe)**

58. Plaintiff repeats and re-alleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

59. Per 15 U.S.C. § 1692f(6), "a debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."

60. The term "debt collector" under 15 U.S.C. § 1692f(6) is defined as: "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests." 15 U.S.C. § 1692(6).

61. As such, a debt collector violates this section of the FDCPA when it takes "any nonjudicial action to effect dispossession or disablement of property if there is no present right to possession of the property claimed as collateral through an enforceable security interest." 15 U.S.C. § 1692f(6).

62. In repossessing Ms. Gaspard's Vehicle, Defendant John Doe used an instrumentality of interstate commerce to enforce a security interest.

63. However, since Ms. Gaspard was not in default on her loan, the John Doe Defendant was not entitled to "effect dispossession or disablement of property" because there was "no present right to possession of the property claimed as collateral through an enforceable security interest." *Id*.

64. Defendant John Doe was thus a debt collector and in violation of the FDCPA.

65. As a result of this violation of the FDCPA, Ms. Gaspard is entitled to actual damages, attorneys' fees and costs and any additional damages the Court allows. 15 U.S.C. § 1692k.

## THIRD CLAIM FOR RELIEF
### New York Uniform Commercial Code ("UCC")
### (As to the Dealership)

66. Plaintiff repeats and re-alleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

8

67. The subject transactions, including the Dealership's repossession of the Vehicle, are subject to Article 9 of New York's Uniform Commercial Code.

68. The Dealership violated Article 9 of the NY UCC by failing to provide any of the required notices in connection with their repossession of the Vehicle, either before or after the repossession. To wit, and without limitation, the Dealership provided none of the notifications required pursuant to NY UCC §§ 9-611, 9-612, 9-614, and 9-616.

69. Because the required notices were not provided at all, they were, by extension, also not provided timely as required by the statute. *See, e.g.,* NY UCC § 9-611.

70. Pursuant to NY UCC § 9-625, Plaintiff is therefore entitled to, *inter alia*, actual damages, statutory damages, costs, and attorneys' fees.

**FOURTH CLAIM FOR RELIEF**
**New York General Business Law § 349 ("NYGBL § 349")**
**(As to the Dealership and Americredit)**

71. Plaintiff repeats and re-alleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

72. Each of the deceptive acts and practices set forth above constitute violations of NYGBL § 349 independent of whether these acts and practices constitute violations of any other law.

73. These violations include the bait and switch scheme pursuant to which she was offered a Murano LE and then provided with a Murano S worth approximately $7,000 less.

74. The Dealership's illegal repossession of the Vehicle detailed herein, when Plaintiff was in full compliance with her obligations under contract, constituted a deceptive business practice.

75. Further, the Dealership's repossession of the Vehicle without contractual or other legal basis was committed in the conduct of business, trade, commerce and/or the furnishing of a service in New York.

76. Each of these actions was consumer-oriented and involved misleading conduct that is recurring and has a broad impact upon the public, or, in the alternative, such misleading practices are the types that could easily recur, could potentially impact similarly situated consumers, and are therefore consumer-oriented and harmful to the public at large.

77. As a result of these violations of NYGBL § 349, Plaintiff suffered and continues to suffer pecuniary and non-pecuniary harm.

78. The Dealership's violations were willful, knowing, and committed in bad faith.

79. For these reasons, Plaintiff is entitled to actual damages, three times actual damages, punitive damages, costs and reasonable attorneys' fees pursuant to NYGBL § 349(h), an injunction staying Defendants from engaging in the misconduct set forth herein, and a declaratory judgment that the Dealership's practices are deceptive as defined under NYGBL § 349.

## FIFTH CLAIM FOR RELIEF
### New York General Business Law § 350 ("NYGBL § 350")
### (As to the Dealership and Americredit)

80. Plaintiff repeats and re-alleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

81. The Dealership's false representations regarding the Vehicle constitute violations of New York General Business Law § 350 independent of whether these representations violate any other state or federal law or give rise to any other common law violation.

82. After first telling Plaintiff the car she initially saw advertised was unavailable, the Dealership gave Plaintiff a false written representation in the form of a printout showing a 2014 Nissan Murano LE.

83. This printout represented and/or would be plausibly understood by a reasonable consumer to have represented, that the Dealership was indeed providing Plaintiff a 2014 Nissan Murano LE.

84. Furthermore, representatives at the Dealership made oral statements unequivocally indicating that they were selling Plaintiff a 2014 Nissan Murano LE and not the inferior vehicle she ultimately received.

85. The Dealership's false advertising was committed in the conduct of business, trade, or commerce or the furnishing of a service in New York.

86. The Dealership knew these misrepresentations to be false and inaccurate, and engaged in this misconduct *inter alia*, to trick Plaintiff into purchasing a car she did not want.

87. The Dealership's false advertising was done knowingly, willfully and in bad faith.

88. As a result of these violations of New York General Business Law § 350, Plaintiff has suffered actual damages.

89. For these reasons, Plaintiff is entitled to actual damages, declaratory judgment that the Dealership has violated New York General Business Law § 350, an injunction against the deceptive practices set forth herein, three times actual damages up to $10,000, punitive damages, costs, and reasonable attorneys' fees.

## SIXTH CLAIM FOR RELIEF
### Conversion
### (As to the Dealership)

90. Plaintiff repeats and re-alleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

91. On January 4, 2020, the Dealership, intentionally and without authority or good faith claim of right, exercised control over Plaintiff's personal property by preventing Plaintiff from the possession, use and enjoyment of her Vehicle.

92. The Dealership's actions were taken with the malicious intent to deprive Plaintiff of the possession, use and enjoyment of her property.

93. The Dealership's illegal sale of her Vehicle in order to profit further from Plaintiff's loss is further evidence of their malicious intent.

94. Plaintiff had an absolute possessory right to the Vehicle.

95. The Dealership had a duty to Plaintiff not to interfere with her right to possession of the Vehicle.

96. The Dealership's control over Plaintiff's Vehicle and their interference with it are in derogation or exclusion of Plaintiff's rights.

97. As a direct and proximate result of the Dealership's malicious and intentional taking of the Vehicle and their refusal to return it, Plaintiff has suffered actual damages including, but not limited to, the loss of the Vehicle.

98. Upon information and belief, the Dealership's actions to repossess Vehicles without a present right of possession and its wrongful refusal to release the Vehicle is part of a larger policy and practice.

99. Accordingly, the Dealership is liable to Plaintiff for their conversion of the Vehicle for; actual damages, punitive damages in an amount sufficient to punish the Dealership for their intentional and malicious repossession and to prevent the Dealership from perpetrating the harm on other consumers, attorneys' fees, costs, and expenses.

### SEVENTH CLAIM FOR RELIEF
### Fraud
### (As to the Dealership and Americredit)

100. Plaintiff repeats and re-alleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

101. The Dealership fraudulently induced Plaintiff to enter into a RIC for the purchase of the Vehicle, which was for a different model than the one verbally agreed to at the time of signing.

102. Plaintiff justifiably relied on the Dealership's misrepresentations of material facts, as a result of which she sustained losses and damages.

103. Specifically, had Plaintiff not been misled by the Dealership to believe she was purchasing the S model under the terms of the RIC, she never would have agreed to pay the sale price to the Dealership.

104. Had the Dealership been truthful about the sales terms and the contents of the RIC and had the Dealership not made these fraudulent misrepresentations, Plaintiff would have walked away and avoided the transaction entirely or, in the alternative, agreed to a lower sales price.

105. As a result of Plaintiff's reasonable reliance upon the Dealership's misrepresentations, she has been damaged in an amount to be determined at trial and is entitled to actual and punitive damages, attorneys' fees, costs and expenses.

## EIGHTH CLAIM FOR RELIEF
### Breach of Contract
### (As to the Dealership)

106. Plaintiff repeats and re-alleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

107. Plaintiff entered into a valid, binding, and enforceable RIC with the Dealership pursuant to which Plaintiff became the titleholder of the Vehicle.

108. Plaintiff was not in default or behind on her loans.

109. The Dealership nonetheless proceeded to unlawfully repossess the Vehicle without contractual or legal basis and in breach of the agreement.

110. Further, the Dealership was required by the terms of the RIC to provide notice upon repossession of the vehicle.

111. The Dealership's unlawful repossession of the vehicle and its repossession without notice both constituted breach of the agreement.

112. Even if the Dealership would have been entitled to repossess and sell the vehicle, the contract requires the Dealership to pay Plaintiff for any profit gained from such a sale.

113. The Dealership has not made any attempt to pay Plaintiff for the sale of the vehicle and instead has unjustly enriched itself with the proceeds.

114. All of the foregoing, individually and collectively, constitute a breach of contract and Plaintiff is entitled to damages in an amount to be proven at trial.

**WHEREFORE**, Plaintiff seeks judgment in Plaintiff's favor and damages against Defendants:

(a) awarding Plaintiff statutory damages and civil penalties, actual damages, consequential damages, treble damages, punitive damages, costs, expenses, and reasonable attorneys' fees;

(b) injunctive relief;

(c) declaratory judgment; and

(d) such other and further relief as may be necessary, just, and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Ms. Gaspard demands a trial by jury as to all issues so triable.

Dated: June 30, 2020

Respectfully submitted,

*/s/ Daniel A. Schlanger*
Schlanger Law Group LLP
80 Broad Street, Suite 1301
New York, NY 10004
T: 212-500-6114
F: 646-612-7996
E: dschlanger@consumerprotection.net
*Attorneys for Plaintiff*
